IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JAMES REGAN,<br>JESSE FAIRCLOTH,<br>MICHAEL PACK,<br>THOMAS HAFFEY,<br>JACOB STAFFORD, and<br>KYLE WATKINS;<br>Each on Behalf of Himself and All Others<br>Similarly Situated,<br><br>　　　　Plaintiffs,<br>v.<br><br>CITY OF CHARLESTON, SOUTH<br>CAROLINA<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 2:13-cv-3046-PMD<br>**COLLECTIVE ACTION**<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW Plaintiffs James Regan, Jesse Faircloth, Michael Pack, Thomas Haffey, Jacob Stafford, and Kyle Watkins (the "Plaintiffs"), by and through their undersigned counsel, and respectfully submit this Complaint against Defendant City of Charleston, South Carolina (the "City" or "Defendant"), each on behalf of himself and all others similarly situated, and allege as follows:

## INTRODUCTION

1.　　This is a collective action brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), to recover compensation, including overtime compensation, and liquidated damages owed to Plaintiffs and all others similarly situated who are or were employed by Defendant.

1

2.     Plaintiffs and all others similarly situated are and were employed by Defendant to serve as fire suppression personnel for the City of Charleston Fire Department.

3.     At all times relevant hereto, Defendant maintained a policy and practice of requiring Plaintiffs and all other similarly situated employees to routinely work in excess of 106 hours per two-week pay period without paying them overtime compensation "at a rate not less than one and one-half times the regular rate," as required by the FLSA.

4.     Defendant also maintained a policy and practice of failing to pay proper overtime compensation to Plaintiffs and others similarly situated while enrolled in Defendant's recruit training school.

5.     Moreover, Defendant failed to pay Plaintiffs and others similarly situated proper overtime compensation for compensable overtime hours logged during certain training courses, completion of which was required by Defendant.

6.     Pursuant to the FLSA, Plaintiffs, each on behalf of himself and all others similarly situated, seek overtime compensation, liquidated damages, pre judgment and post-judgment interest, and attorneys' fees and costs from Defendant.

7.     Subsequent to the filing of this action, Plaintiffs will request this Court to authorize concurrent notice to all former and current employees similarly situated to the Plaintiffs who are or were employed by Defendant as personnel for the City of Charleston Fire Department, informing them of the pendency of this action and their right to opt into this collective action lawsuit pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this claim pursuant to 29 U.S.C. § 216 and 28 U.S.C. § 1331.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1331(b), as the events or omissions giving rise to the claims alleged herein occurred in the Charleston Division of the District of South Carolina.

## PARTIES

10.     At all times relevant, Plaintiff James Regan is and was an employee of the Defendant.

11.     At all times relevant, Plaintiff Jesse Faircloth is and was an employee of the Defendant.

12.     At all times relevant, Plaintiff Michael Pack is and was an employee of the Defendant.

13.     At all times relevant, Plaintiff Thomas Haffey is and was an employee of the Defendant.

14.     At all times relevant, Plaintiff Jacob Stafford is and was an employee of the Defendant.

15.     At all times relevant, Plaintiff Kyle Watkins is and was an employee of the Defendant.

16.     For purposes of this Complaint, Plaintiffs and all others similarly situated who are or were employed by the City of Charleston to serve as (or training to serve as) fire suppression personnel on the City of Charleston Fire Department shall be called the "Firefighters."

17.     Defendant City of Charleston is a municipal corporation, duly organized and existing under the laws of the State of South Carolina, and is subject to the requirements of the FLSA.

18.     At all times material, the Firefighters were employees of Defendant pursuant to 29 U.S.C. § 203(e)(1); Defendant was the employer of the Firefighters within the meaning of 29 U.S.C. § 203(d); and Defendant employed the Firefighters within the meaning of 29 U.S.C. § 203(g).

## FACTUAL ALLEGATIONS

19.     The Firefighters are scheduled and paid by the City based on a two-week pay period.

20.     The Firefighters are compensated on a yearly salary; at the conclusion of each two-week pay period, the Firefighters receive a payment equal to their yearly salary divided by twenty-six (26).

21.     When the Firefighters begin employment with the City they must complete a recruit training program which lasts twenty to twenty-six weeks.

22.     Defendant's employees, when enrolled in its recruit training program, are not yet trained in fire suppression activities and do not possess the legal authority or responsibility to engage in fire suppression. Therefore, these recruits do not engage in the prevention, control, or extinguishment of fire or respond to emergency situations where life, property, or the environment is at risk.

23.     During the time when Plaintiff Faircloth was enrolled in Defendant's recruit training school, the recruits, including Plaintiff Faircloth, worked 96 hours during every two-week pay period. Defendant was required to pay the recruits overtime compensation for all hours worked in excess of forty hours per week. During this time, however, Defendant did not pay any overtime compensation to Plaintiff Faircloth. Upon information and belief, Plaintiff Faircloth was paid pursuant to the same policy and practice by which Defendant paid all recruits during

4

that time. Therefore, upon information and belief, Defendant failed to pay overtime compensation to Plaintiff Faircloth and all other similarly situated employees while enrolled in Defendant's recruit training school.

24.     Defendant subsequently changed the method by which it schedules and pays employees enrolled in its recruit training school. Plaintiff Haffey was enrolled in Defendant's recruit training school at a time after this change went into effect.

25.     During Defendant's recruit training school subsequent to this change, the Firefighters are scheduled to work eighty hours per two-week pay period. The Firefighters, however, routinely and frequently are required by Defendant to work in excess of eighty hours per pay period during the time in which they are enrolled in recruit training school. Defendant paid overtime compensation to the Firefighters in recruit training school for all hours worked in excess of eighty hours per two week pay period.

26.     Defendant failed to pay Plaintiff Haffey for overtime hours worked during recruit training school at a rate that is not less than one and one-half the rate at which he was paid for his non-overtime regular hours.

27.     For example, during the two week pay period concluding on March 02, 2012, Plaintiff Haffey was scheduled to work 80 hours of recruit training time but actually worked 104 hours, such that Defendant paid Plaintiff Haffey for twenty-four (24) hours of overtime pay. However, Defendant paid overtime compensation to Plaintiff Haffey at a rate that is less than one and one-half the rate at which he was paid for his non-overtime regular hours. Defendant paid Plaintiff for his non-overtime hours at a rate of $15.96 per hour but paid his overtime hours at a rate of **$5.91 per hour**.

28.     Defendant failed to pay Plaintiff Haffey a rate that is not less than one and one-half his non-overtime regular rate for *each* overtime hour he worked during the twenty-week recruit training school.

29.     Upon information and belief, Plaintiff Haffey is paid pursuant to the same policy and practice by which all Firefighters are paid by Defendant when enrolled in recruit training school. Therefore, upon information and belief, Defendant failed to pay all Firefighters for overtime hours worked during recruit training school at a rate that is not less than one and one-half the rate at which they were paid for non-overtime regular hours.

30.     Subsequent to completing Defendant's recruit training school, the Firefighters are scheduled by Defendant to work on a rotating cycle that resets every six weeks: the Firefighters work 120 hours per two-week pay period for four consecutive weeks and subsequently work 96 hours during the following two-week pay period.

31.     Under the FLSA, Defendant is required to pay overtime compensation to Firefighters who have completed recruit training school for all hours worked in excess of 106 hours per two-week pay period.

32.     The Firefighters routinely and frequently work more hours than as scheduled, as such schedule is described in the preceding paragraph, pursuant to the City of Charleston Fire Department Standard Operating Procedure: 115.06 - IP Procedures (the "IP Procedures"). "IP" is an abbreviation of "incentive pay," which is a bonus payment that the City pays the Firefighters for working in excess of their scheduled hours.

33.     The IP Procedures apply to all the Firefighters. The IP Procedures state that the Firefighters *must* work what is called "Mandatory IP" at certain times and are *permitted* to work what is called "Voluntary IP" at other times.

34.    IP shifts are allocated in twenty-four (24) hour blocks, such that, for example, if an employee works three (3) IP shifts during a two-week pay period, said employee will work an additional seventy-two (72) hours that pay period. If that employee works these three (3) IP shifts during a two-week pay period in which he was scheduled to work 120 hours, said employee will actually work 192 hours during such a two-week pay period.

35.    Defendant paid the Firefighters a bonus payment for each IP shift worked during a pay period. Therefore, it was the understanding of the Firefighters that their payment increased based on the number of hours worked.

36.    During pay periods in which the Firefighters are scheduled to work 120 hours, the City pays the Firefighters IP bonuses for every hour worked in excess of 120 hours. During pay periods in which the Firefighters are scheduled to work 96 hours, the City pays the Firefighters IP bonuses for every hour worked in excess of 106 hours. Prior to May 14, 2011, during pay periods in which the Firefighters are scheduled to work 96 hours, the City paid the Firefighters IP bonuses for every hour worked in excess of 96 hours.

37.    The Firefighters routinely and frequently work multiple IP shifts during a two-week pay period, as known to and required by Defendant.

38.    Defendant calculates the overtime rate of compensation paid to the Firefighters by adding the employee's two-week base salary payment and the IP bonus, if any, the employee earned during that two weeks; and then dividing that sum by the total number of hours worked by the employee during the two-week pay period; and dividing this rate in half.

39.    The calculation provided in the preceding paragraph always results in an overtime rate which is less than one and one-half the rate at which the Firefighters were paid for non-overtime regular rate of pay, as is well known to Defendant.

40.    Therefore, the City paid overtime compensation to the Firefighters who have completed recruit training school for all overtime hours at a rate that is less than one and one-half the rate at which the Firefighters were paid for their non-overtime regular hours.

41.    The City failed to pay the Firefighters a yearly salary reasonably calculated to ensure that the Firefighters' hourly rate of pay (calculated by dividing the total number of hours worked during a pay period into the two-week base salary payment) would not fall below the legal minimum hourly wage set the FLSA and the Department of Labor.

42.    At all times relevant hereto, the legal minimum wage was $7.25 per hour.

43.    The rate calculated when the Firefighters' two-week base salary payment is divided by the total number of hours worked during a two-week pay period frequently and routinely falls below the legal minimum wage of $7.25.

44.    For example, in the pay period between December 11, 2010 and December 24, 2010, Plaintiff Regan worked his scheduled 120 hours as well as two IP shifts for an additional 48 hours, meaning he worked a total of 168 hours during this two week pay period. Plaintiff Regan's base salary payment at the time was $1,117.44 per pay period. Plaintiff's rate of pay per hour for this pay period was **$6.65** ($1,117.44 ÷ 168), which falls below the legal minimum wage of $7.25.

45.    Similarly, during the pay period concluding on March 18, 2011, Plaintiff Regan worked 192 hours during a pay period in which his salary payment was $1,182.65, resulting in an hourly rate of pay of **$6.15**.

46.    During the pay period concluding on September 14, 2012, Plaintiff Haffey worked 184 hours during a pay period in which his salary payment was $1,277.26, resulting in an hourly rate of pay of **$6.94**.

47.    During the pay period concluding on October 26, 2012, Plaintiff Haffey worked 192 hours during a pay period in which his salary payment was $1,277.26, resulting in an hourly rate of pay of **$6.65**.

48.    During the pay period concluding on April 12, 2013, Plaintiff Haffey worked 201 hours during a pay period in which his salary payment was $1,354.53, resulting in an hourly rate of pay of **$6.73**.

49.    During the pay period concluding on April 26, 2012, Plaintiff Haffey worked 197 hours during a pay period in which his salary payment was $1,354.53, resulting in an hourly rate of pay of **$6.87**.

50.    During the pay period concluding on May 11, 2012, Plaintiff Stafford worked 180 hours during a pay period in which his salary payment was $1,218.12, resulting in an hourly rate of pay of **$6.76**.

51.    During the pay period concluding on October 12, 2012, Plaintiff Stafford worked 224 hours during a pay period in which his salary payment was $1,218.12, resulting in an hourly rate of pay of **$5.44**.

52.    During the pay period concluding on November 23, 2012, Plaintiff Stafford worked 176 hours during a pay period in which his salary payment was $1,218.12, resulting in an hourly rate of pay of **$6.92**.

53.    During the pay period concluding on May 24, 2013, Plaintiff Stafford worked 192 hours during a pay period in which his salary payment was $1,291.82, resulting in an hourly rate of pay of **$6.72**.

54.    During the pay period concluding on January 18, 2013, Plaintiff Watkins worked 196 hours during a pay period in which his salary payment was $1,230.30, resulting in an hourly rate of pay of **$6.27**.

55.    During the pay period concluding on February 01, 2013, Plaintiff Watkins worked 192 hours during a pay period in which his salary payment was $1,230.30, resulting in an hourly rate of pay of **$6.40**.

56.    During the pay period concluding on March 15, 2013, Plaintiff Watkins worked 182 hours during a pay period in which his salary payment was $1,230.30, resulting in an hourly rate of pay of **$6.75**.

57.    During the pay period concluding on August 16, 2013, Plaintiff Watkins worked 180 hours during a pay period in which his salary payment was $1,230.30, resulting in an hourly rate of pay of **$6.83**.

58.    During the pay period concluding on January 18, 2013, Plaintiff Faircloth worked 180 hours during a pay period in which his salary payment was $1,291.82, resulting in an hourly rate of pay of **$7.17**.

59.    Plaintiff Pack frequently worked multiple IP shifts such that, upon information and belief, his hourly rate of pay has fallen below the legal minimum wage

60.    The above stated occasions on which the Plaintiffs' hourly rate of pay fell below the legal minimum wage were not due to unusual, unforeseen, or exceptional circumstances. Upon information and belief, all or nearly all the Firefighters have suffered one or more such occasions when his or her hourly rate of pay fell before the legal minimum wage.

61.    Defendant requires that a portion of the Firefighters attend training courses to obtain and maintain certification to perform certain skills to assist in the performance of their

jobs as firefighters; included are training courses to obtain certification for handling hazardous materials ("HazMat"); training regarding the location, extrication, and initial medical stabilization of victims trapped in confined spaces due to natural disasters, structural collapse, transportation accidents, mines and collapsed trenches ("Urban Search and Rescue" or "USAR"); and training in handling and operating marine craft during the commission of fire suppression practices ("Martine Team").

62.     Defendant maintains a policy and practice of requiring those Firefighters who earn certification in these skills to attend training courses for a certain number of hours each year. If said Firefighters attend training course for a requisite number of hours set by the City, Defendant pays said employee a bonus to its yearly salary.

63.     For example, state-issued HazMat certification requires 40 hours of training. However, Defendant requires the Firefighters to log at least 100 hours of Hazmat training each year in order to earn the salary bonus.

64.     Defendant maintains a policy and practice of not compensating the Firefighters for the training hours the Firefighters log to earn certification and the salary bonus.

65.     For example, Plaintiff Pack is a member of Defendant's HazMat team. Plaintiff Pack trained without pay for at least 100 hours per year in order to achieve and maintain his HazMat qualification. Therefore, Defendant failed to compensate Plaintiff Pack for the hours he spent on HazMat training at a rate not less than one and one-half times the regular rate at which he was employed for non-overtime regular hours.

66.     Effective 2014, Defendant requires that, in order to become eligible for promotion to the rank of Captain, a Firefighter must satisfactorily complete a curriculum of training,

leadership, and higher education courses which are set forth in City of Charleston Fire Department Standard Operating Procedure: 101.3 - Promotion to Captain.

67.     Defendant also requires that all Firefighters who were promoted to Captain before SOP 101.3 went into effect must also satisfactorily complete the curriculum of training courses provided in SOP 101.3 or else the Captain will be demoted.

68.     Defendant maintains a policy and practice of not compensating the Firefighters for the hours spent completing the curriculum of training courses listed in SOP 101.3

## COUNT I
## Violation of 29 U.S.C. § 207 - Plaintiffs

69.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 68.

70.     Under the FLSA, Defendant is required to pay overtime compensation to Plaintiffs who have completed recruit training school for all hours worked in excess of 106 hours per two week pay period. *See* 29 U.S.C. § 207(k).

71.     Under the FLSA, Defendant is required to pay Plaintiffs for overtime compensation "at a rate not less than one and one-half times the regular rate" at which the Plaintiffs are employed. *See* 29 U.S.C. § 207(a).

72.     At all times relevant hereto, Defendant failed to compensate Plaintiffs for overtime hours at a rate not less than one and one-half times their regular rate, in violation of 29 U.S.C. § 207.

73.     Because Plaintiffs' hourly rate of pay fell below the legal minimum wage of $7.25, Defendant cannot pay Plaintiffs pursuant to the "fluctuating workweek" method. 29 C.F.R. § 778.114(c) ("The 'fluctuating workweek' method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the

employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act . . . .").

74.    Additionally, Defendant cannot pay Plaintiffs pursuant to the fluctuating workweek method because Plaintiffs were not paid a fixed salary (excluding overtime payments) each pay period regardless of the number of hours worked; instead Plaintiffs received various bonuses including Incentive Pay bonuses and special training and certification bonuses.

75.    Before completing Defendant's recruit training school, Plaintiffs did not qualify as "employees in fire protection activities" as provided in 29 U.S.C. § 207(k). Therefore, during the time before Plaintiff completed Defendant's recruit training school, Defendant was required to pay overtime compensation to Plaintiff for all hours worked in excess of forty hours per week.

76.    Defendant failed to pay overtime compensation to Plaintiffs "at a rate not less than one and one-half times the regular rate" for overtime hours worked during the time that Plaintiff's were enrolled in Defendant's recruit training school.

77.    Defendant failed to pay overtime wages to Plaintiffs for all compensable hours including those hours spent in training courses necessary to keep their jobs and to qualify for special-skills teams, and in courses obtaining certification for special skills the Firefighters use to carry out their employment responsibilities, including certification for HazMat, USAR, Marine Team, and other such programs.

78.    Defendant's failure to provide Plaintiffs overtime compensation at a rate not less than one and one-half times the regular rate for all compensable overtime hours constitutes a violation of the FLSA, 29 U.S.C. § 207.

79.    Defendant's violations of the FLSA were knowing and willful.

80.     As a result of Defendant's FLSA violations, Plaintiff requests that this Court award damages for unpaid overtime compensation, liquidated damages in an amount equal to the unpaid overtime compensation, reasonable attorneys' fees, costs, and interest, and all other relief as the Court deems just and appropriate.

## COUNT II
## Violation of 29 U.S.C. § 207 - Collective Action on Behalf of Those Similarly Situated as Plaintiffs

81.     Plaintiffs and all others similarly situated (the "Firefighters") hereby incorporate by reference the allegations contained in paragraphs 1 through 80.

82.     Under the FLSA, Defendant is required to pay overtime compensation to the Firefighters who have completed recruit training school for all hours worked in excess of 106 hours per two week pay period. *See* 29 U.S.C. § 207(k).

83.     Under the FLSA, Defendant is required to pay the Firefighters for overtime compensation "at a rate not less than one and one-half times the regular rate" at which the Plaintiffs are employed. *See* 29 U.S.C. § 207(a).

84.     At all times relevant hereto, Defendant failed to compensate the Firefighters for overtime hours at a rate not less than one and one-half times their regular rate, in violation of 29 U.S.C. § 207.

85.     Because the Firefighters' hourly rate of pay fell below the legal minimum wage of $7.25, Defendant cannot pay the Firefighters pursuant to the "fluctuating workweek" method. 29 C.F.R. § 778.114(c) ("The 'fluctuating workweek' method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act . . . .").

86.    Additionally, Defendant cannot pay Firefighters pursuant to the fluctuating workweek method because Plaintiffs were not paid a fixed salary (excluding overtime payments) each pay period regardless of the number of hours worked; instead the Firefighters received various bonuses including Incentive Pay bonuses and special training and certification bonuses.

87.    Before completing Defendant's recruit training school, the Firefighters do not qualify as "employees in fire protection activities" as provided in 29 U.S.C. § 207(k). Therefore, during the time before the Firefighters complete Defendant's recruit training school, Defendant was required to pay overtime compensation to the Firefighters for all hours worked in excess of forty hours per week.

88.    Defendant failed to pay overtime compensation to the Firefighters "at a rate not less than one and one-half times the regular rate" for all overtime hours worked during the time that Plaintiff's were enrolled in Defendant's recruit training school.

89.    Defendant failed to pay the Firefighters overtime wages for all compensable hours including those hours spent in training courses necessary to keep their jobs and to qualify for special-skills teams, and in courses obtaining certification for special skills the Firefighters use to carry out their employment responsibilities, including certification for HazMat, USAR, Marine Team, and other such programs.

90.    Defendant's failure to provide Firefighters overtime compensation at a rate not less than one and one-half times the regular rate for all compensable overtime hours constitutes a violation of the FLSA, 29 U.S.C. § 207.

91.    Defendant's violations of the FLSA were knowing and willful.

92.    As a result of Defendant's FLSA violations, the Firefighters request that this Court award damages for unpaid overtime compensation, liquidated damages in an amount equal

15

to the unpaid overtime compensation, reasonable attorneys' fees, costs, and interest, and all other relief as the Court deems just and appropriate.

WHEREFORE, Plaintiffs and all others similarly situated to Plaintiffs pray that this Court

A.  Enter judgment in favor of Plaintiffs and all others similarly situated and against Defendant;

B.  Award damages for the amount of unpaid overtime compensation;

C.  Award liquidated damages in an amount equal to unpaid overtime compensation;

D.  Award reasonable attorneys' fees, costs, and interest; and

E.  Award all other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a Jury Trial on all issues and claims so triable.

Respectfully submitted, this 7th day of November, 2013.

Le Clercq Law Firm, P.C.

___s/Ben Le Clercq___
By: Benjamin Scott Whaley Le Clercq
353 North Shelmore, Suite 260
Mt. Pleasant, South Carolina 29464
Phone: 843 722-3523
Email: Ben@LeClercqLaw.com
South Carolina Bar No. 65754
U.S. District Court # 7453

*Counsel for Plaintiffs*

16