**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| James Regan, Jesse Faircloth, | ) | |
| Michael Pack, Thomas Haffey, | ) | |
| Jacob Stafford, and Kyle Watkins, | ) | |
| Each on Behalf of Himself and All Others | ) | |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:13-cv-3046-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| City of Charleston, South Carolina, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiffs James Regan, Jesse Faircloth, Michael Pack, Thomas Haffey, Jacob Stafford, and Kyle Watkins's ("Plaintiffs") Motion for Conditional Class Certification ("Motion"). Plaintiffs seek, *inter alia*, conditional certification of a putative class pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). For the reasons set forth herein, Plaintiffs' Motion is granted in part and denied in part.

**BACKGROUND**

On November 7, 2013, Plaintiffs commenced this action on behalf of themselves and others similarly situated, seeking unpaid overtime compensation pursuant to the FLSA. The above-named Plaintiffs, as well as those who have subsequently given notice of their consent to join this action, are current or former employees of Defendant City of Charleston ("Defendant" or "the City") and the City's Fire Department ("Fire Department"). More specifically, Plaintiffs

are firefighters[1] who are or were paid pursuant to the City's fluctuating workweek method or pay plan.

Plaintiffs' Complaint primarily alleges that the City's utilization of the fluctuating workweek pay plan—in particular its incentive-pay provisions—violates the statutory and regulatory requirements pertaining to such pay plans. Plaintiffs' Complaint also asserts claims relating to the method by which the City previously compensated firefighter recruit trainees. Moreover, Plaintiffs' Complaint alleges that certain named Plaintiffs, as well as others similarly situated, have not been properly compensated for training hours that they contend constitute compensable time under the FLSA. Finally, Plaintiffs claim that the City's alleged violations of the FLSA are or were willful and knowing. In response to these allegations, the City admits that it utilizes the fluctuating workweek method but contends that its pay plan is lawful and in compliance with the FLSA and all applicable laws and regulations. Accordingly, the City denies the asserted claims and any resulting liability.

Plaintiffs now seek to conditionally certify this matter as a collective action under the FLSA. On February 7, 2014, Plaintiffs filed the instant Motion requesting conditional certification of a primary class and several subclasses, as well as seeking permission to send notices to potential class members. The City responded to Plaintiffs' Motion on February 26, 2014, conceding that Plaintiffs have met the modest burden with regard to parts of their request for conditional certification. Nevertheless, the City's Response also noted a number of specific objections to the proposed class and subclasses, as well as to some of the requested notice provisions and procedures. Plaintiffs filed their Reply on March 10, 2014, addressing two of the issues raised by the City in its Response. On June 30, 2014, the Court held a status conference to

---

1.    For purposes of this Order, the Court refers to all uniformed fire protection and suppression members and employees of the Fire Department as firefighters, without regard to rank.

discuss the Motion and to clarify certain issues raised by the Parties' briefs. Plaintiffs' Motion is now ripe for consideration.

## LEGAL STANDARD

Under the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and similarly situated employees. The FLSA's collective action provision states that:

> [a]n action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by "similarly situated" employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their employers. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores, Inc.*, 2:12-CV-00363, 2014 WL 934379, at *2 (E.D. Va. Mar. 7, 2014), *reconsideration denied*, 2014 WL 2121563 (E.D. Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20, 2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). In deciding whether the named plaintiffs in a FLSA action are "similarly situated" to other potential plaintiffs, courts generally employ a two-stage approach.[2] *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)

---

2.    Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 2014 WL 934379, at *2 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, C/A No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process set forth in the cases identified above.").

(quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); *see also Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 6012484, at *1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

The first step in this process, which is the subject of the instant Motion, is the "notice," or "conditional certification," stage. *Purdham*, 629 F. Supp. 2d at 547. Here, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" that they can "opt-in" to the collective action. *Pelczynski*, 284 F.R.D. at 367–68. With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At this stage, the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard," *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011), requiring plaintiffs to make a "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and

the case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action.  The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citing § 216(b))).

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief."  *Pelczynski*, 284 F.R.D. at 368.  At this optional "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis.  *Steinberg*, 2011 WL 1335191, at *2; *see Pelczynski*, 284 F.R.D. at 368. "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations."  *Curtis*, 2013 WL 1874848, at *3 (internal quotation marks omitted).  If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss without prejudice the opt-in plaintiffs' claims, and permit the named plaintiffs to proceed on their individual claims.  *Id.*

## ANALYSIS

Plaintiffs specifically request that this Court enter an Order: (1) conditionally certifying a single putative class of individual firefighters ("Proposed Primary Class"), as detailed further herein; (2) authorizing and conditionally certifying three proposed subclasses, as detailed further herein; (3) requiring the City to produce the names, addresses, telephone numbers, and email addresses of all members belonging to the Proposed Primary Class and the subclasses within ten days of conditional certification; (4) authorizing Plaintiffs' counsel to send a proposed notice to members of the Proposed Primary Class via both U.S. Mail and email; (5) authorizing Plaintiffs' counsel to send a "follow-up," or reminder, notice thirty days after sending the initial notice; and (6) requiring the City to post the Court-authorized notice in a conspicuous location in each of the Fire Department's fire stations where members of the Proposed Primary Class work.  The Court will address Plaintiffs' requested relief, as well as the City's objections thereto, *seriatim*.

## I.    Conditional Certification

### A.    *Proposed Primary Class*

At the outset, Plaintiffs move to conditionally certify the following Proposed Primary Class:

> All persons employed by the City of Charleston, South Carolina at any time from November 7, 2010 to the present who served, or trained to serve, as a uniformed suppression member of the City of Charleston Fire Department.

Pls.' Mot. for Conditional Class Certification 2, ECF No. 43.  Although a plaintiff's burden of proof and the court's standard of review at the notice stage are fairly lenient, "courts should not exercise their discretion to facilitate notice unless '[t]he facts and the circumstances of the case illustrate' that a class of 'similarly situated' aggrieved employees exists."  *Purdham*, 629 F. Supp. 2d at 547–48 (alteration in original) (quoting *Hoffmann–La Roche, Inc.*, 493 U.S. at 170).

Here, the City concedes that Plaintiffs have seemingly made the requisite showing for conditional certification with regard to the Proposed Primary Class and consents in part to Plaintiffs' requests. *See* Def.'s Resp. 5, ECF No. 49. However, the City seeks to have the Proposed Primary Class more narrowly defined, in terms of both the firefighters that Plaintiffs claim are "similarly situated" and the applicable limitations period. Accordingly, the Court will address only the City's objections to Plaintiffs' Proposed Primary Class.

First, the City contends that the proffered parameters of the Proposed Primary Class are too broadly defined because they include individuals who even Plaintiffs do not claim are "similarly situated" to the named Plaintiffs. In particular, the City asserts that the Proposed Primary Class is not limited to persons employed in a non-exempt capacity. For instance, the City maintains that under the language Plaintiffs ask this Court to approve, the fire chief, as well as individuals employed as assistant chiefs, battalion chiefs, and in other positions undisputedly exempt from the FLSA's requirements, would be included in the Proposed Primary Class. Moreover, the City notes that the definition of the Proposed Primary Class does not limit potential class members to sworn employees of the Fire Department who are paid pursuant to the fluctuating workweek method or pay plan Plaintiffs presently challenge. The City claims that without further limitation, sworn personnel employed as training officers, who are paid based on a forty-hour work week under an entirely separate plan, could be inappropriately included in the Proposed Primary Class. In response, and to narrow the scope of the Proposed Primary Class, the City seeks to amend Plaintiffs' definition of the Proposed Primary Class to limit it to firefighters employed "in a non-exempt capacity" and "who were paid pursuant to the [C]ity's Fluctuating Workweek pay plan." *Id.* at 7. Plaintiffs do not address this objection in their Reply.

The Court agrees with the City and recognizes the need to define the putative class with greater particularity. While the Court finds that the City's proposed clarification—specifically, the limitation to firefighters employed "in a non-exempt capacity"—may lead to more confusion than clarity, because Plaintiffs have failed either to address or object to this requested change or to propose an alternate phrasing, the definition of the Proposed Primary Class shall be amended accordingly.

Second, the City objects to Plaintiffs' reference to, and attempted utilization of, a three-year statute of limitations in their definition of the Proposed Primary Class. As detailed above, Plaintiffs' proffered definition of the Proposed Primary Class includes firefighters employed "at any time from November 7, 2010 to the present." Pls.' Mot. for Conditional Class Certification 2. FLSA claims are generally subject to a two-year statute of limitations, but this period is extended to three years for "cause[s] of action arising out of a willful violation." 29 U.S.C. § 255(a). Therefore, in essence, the Parties disagree as to the issue of willfulness and whether the two- or three-year limitations period shall apply.

Plaintiffs here have alleged that the City willfully violated the FLSA.[3] In its Response, the City contends that Plaintiffs "have not merely failed to offer any factual basis for asking for class certification beyond the normal two-year period, but they have actually proffered evidence along with their motion affirming that the City's alleged violation[s] were **not willful**." Def.'s Resp. 8. The City thus maintains that because Plaintiffs have presented only an "unsupported

---

3. The Supreme Court clarified the meaning of willfulness under § 255(a) in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). The *McLaughlin* Court held that the appropriate standard of willfulness was whether an employer knew the conduct violated FLSA or showed reckless disregard for the fact that its conduct was prohibited. *Id.* at 133. A subsequent Fourth Circuit ruling applying this standard recognized that:

> only those employers who "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]" have willfully violated the statute. Negligent conduct is insufficient to show willfulness. Furthermore, the employee bears the burden of proof when alleging a violation is willful.

*Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (alteration in original) (citations omitted) (quoting *McLaughlin*, 486 U.S. at 133, 135).

conclusory statement" that the alleged violations are or were willful, the two-year limitations period should apply. *Id.* at 7. However, notwithstanding the City's arguments, the issue of willfulness is a question "going to the merits of the case and not whether notice should be issued to potential claimants." *Resendiz–Ramirez v. P&H Forestry, LLC*, 515 F. Supp. 2d 937, 942 (W.D. Ark. 2007); *see also Ott v. Publix Super Mkts., Inc.*, 3:12-0486, 2013 WL 1874258, at *3 (M.D. Tenn. May 3, 2013) ("The Defendant's first objection is overruled because it requires a decision on the merits of the statutes of limitation issue, and is not ripe for decision at this time."). Thus, "[c]ourts have held that a conclusory willfulness allegation is sufficient to justify providing notice to the putative class on the basis of the potentially applicable three-year period." *Sylvester v. Wintrust Fin. Corp.*, 12 C 01899, 2013 WL 5433593, at *5 (N.D. Ill. Sept. 30, 2013) (collecting cases); *see Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (same); *cf.* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Consequently, any facts relevant to the alleged willfulness of the City's conduct must be elicited during the course of discovery. *Resendiz–Ramirez*, 515 F. Supp. 2d at 942–43; *see Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 865 (S.D. Tex. 2012) ("FLSA plaintiffs are not required to prove willfulness prior to discovery." (quoting *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012) (internal quotation marks omitted))). Of course, the City may challenge the three-year statute of limitations and the issue of willfulness at a later date, "either through a dispositive motion at the appropriate time, or at trial, or both." *Delgado v. Ortho-McNeil, Inc.*, SACV07-263CJCMLGX, 2007 WL 2847238, at *4 n.2 (C.D. Cal. Aug. 7, 2007). If the alleged violations are ultimately found not to have been willful in nature, the two-year statute of limitations will apply and

Plaintiffs' respective claims may be limited or time-barred accordingly. *See Resendiz–Ramirez*, 515 F. Supp. 2d at 943; *Delgado*, 2007 WL 2847238, at *4 n.2.

Accordingly, the City's objection to the limitations period referenced by Plaintiffs in their proffered definition of the Proposed Primary Class is overruled. However, "[t]his ruling should not be interpreted as a finding that [the City] in fact did act willfully, or that a three-year statute of limitations will govern the case; those determinations will be made after notice and discovery." *Sylvester*, 2013 WL 5433593, at *5; *see also Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, 12 CIV. 1054, 2013 WL 2284882, at *2 (S.D.N.Y. May 23, 2013) ("Because it is disputed whether defendants' alleged violations were willful, the notice should err on the side of over-inclusivity and indicate that it covers violations that have occurred within the last three years (the statute of limitations for claims of willful FLSA violations).").  Instead, the Court finds merely that, for the limited purpose of conditional certification and approving the contents of the Court-facilitated notice, Plaintiffs' reference to the FLSA's three-year statute of limitations is appropriate. *See Ahle v. Veracity Research Co.*, CIV.09-00042ADM/RLE, 2009 WL 3103852, at *6 (D. Minn. Sept. 23, 2009).

In light of the City's general concession regarding conditional certification and the foregoing resolution of its various objections, the Court conditionally certifies the following class of employees ("Primary Class"):

> All persons employed in a non-exempt capacity by the City of Charleston, South Carolina at any time from November 7, 2010 to the present who served, or trained to serve, as a uniformed suppression member of the City of Charleston Fire Department, and who were paid pursuant to the City's Fluctuating Workweek pay plan.

The Court finds that Plaintiffs have met their modest burden of demonstrating that the members of the Primary Class, as modified above, are similarly situated to the named Plaintiffs.

B.      *Proposed Subclasses*

In addition to seeking conditional certification of the Proposed Primary Class, Plaintiffs

ask that this Court authorize and conditionally certify the following subclasses:

1.      Members of the City of Charleston Fire Department that were enrolled in the Charleston Fire Department Recruit School *before November 1, 2011*

2.      Members of the City of Charleston Fire Department that were enrolled in the Charleston Fire Department Recruit School at any time *after November 1, 2011*

3.      Members of the City of Charleston Fire Department that have attended training courses to obtain and maintain certification to perform certain skills to assist in the performance of their jobs, specifically including but not limited to training courses to obtain certification:

   a.   for handling hazardous materials ("HazMat");

   b.   training regarding the location, extrication, and initial medical stabilization of victims trapped in confined spaces due to natural disasters, structural collapse, transportation accidents, mines and collapsed trenches ("Urban Search and Rescue" or "USAR");

   c.   training in handling and operating marine craft during the commission of fire suppression practices ("Marine Team"); and

   d.   as set forth in Standard Operating Procedure 101.3, relating to training courses necessary for certain Fire Department Captains to complete in order to remain a Captain.

Pls.' Mot. for Conditional Class Certification 2 (emphasis added).  However, at the June 30,

2014 status conference, Plaintiffs did not object to the Court conditionally certifying only the

Primary Class at this juncture.  Accordingly, for the reasons outlined at the status conference, the

Court declines to conditionally certify Plaintiffs' three proposed subclasses at this time, and any

reference to the subclasses will be deleted from the approved notice.  Of course, Plaintiffs may

renew their request to conditionally certify the three subclasses as a later date, should the facts

and circumstances warrant doing so, and any discovery issues related to the subclasses may be

taken up at that time.

## II.    Production of Contact Information

Plaintiffs also seek an Order requiring the City to produce certain contact information for all members of the Primary Class and subclasses within ten days of conditional certification. More particularly, Plaintiffs seek the names, addresses, telephone numbers, and email addresses for all firefighters belonging to the Primary Class and subclasses.  In its Response, the City consents to the production of the names and addresses of potential plaintiffs but contends that Plaintiffs are not entitled to email addresses and telephone numbers.  With regard to email addresses, the City asserts that it does not maintain a record of its employees' personal email addresses and thus "cannot produce what it does not have." Def.'s Resp. 29.  As for telephone numbers, the City maintains that "subjecting all of its employees to unsolicited telephone calls is invasive of their privacy, particularly in light of the fact that some have affirmed their disagreement with this lawsuit."  *Id.*  The City also argues that requiring production of potential plaintiffs' telephone numbers will deprive the Court of the ability to control the dissemination of information, in turn thwarting the purpose of judicial participation in the notice process. Plaintiffs do not address or respond to the City's objections in their Reply.

District courts have taken a variety of positions and approaches as to what information regarding potential plaintiffs may or shall be disclosed to named plaintiffs at the notice stage of FLSA actions.[4]  However, where, as here, the plaintiffs have provided no basis for their need for the telephone numbers or email addresses of potential plaintiffs and where the defendant has objected to the production of such information, the Court is persuaded by the case law in this

---

4.    *Compare Velasquez v. Digital Page, Inc.*, CV 11-3892 LDW AKT, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) ("In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."), *with Amrhein v. Regency Mgmt. Servs., LLC*, CIV. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("Courts in this district hold that absent a showing by plaintiffs of a 'special need' for disclosure of class members' telephone numbers or other personal information, such as social security numbers or dates of birth, ordering such disclosure is inappropriate.").

circuit that tends to counsel against ordering production. *E.g.*, *Ruiz v. Monterey of Lusby, Inc.*, CIV.A. DKC 13-3792, 2014 WL 1793786, at *3 n.1 (D. Md. May 5, 2014) ("Defendants will not . . . be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any 'special need' for the disclosure of this information."); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 836 (E.D. Va. 2008) ("Plaintiffs' request for phone numbers is denied."); *cf. Sharer v. Tandberg, Inc.*, 1:06CV626 JCC, 2006 WL 2988104, at *3 (E.D. Va. Oct. 17, 2006) ("Plaintiffs have provided a basis of need for name, address, and phone number, but not the other requested information."). Accordingly, Plaintiffs' request that the Court order the City to produce the telephone numbers and email addresses of potential plaintiffs is denied.[5] Nevertheless, the City is hereby ordered to produce the names and addresses of all potential plaintiffs within ten days of this Order.

## III.    Form and Manner of Court-Facilitated Notice

Having concluded that conditional certification of this action pursuant to § 216(b) is appropriate under the circumstances, the Court turns now to Plaintiffs' various requests regarding the Court-facilitated notice to potential opt-in plaintiffs, as well as the City's objections to the form and manner of such notice.

### A.    *Proposed Initial Notice*

Contemporaneously with their filing of the instant Motion, Plaintiffs have provided the Court with a proposed notice, titled "Important Notice About Your Right to Join a Lawsuit Seeking to Recover Unpaid Overtime Compensation from the City of Charleston, South

---

5.    "To the extent the notice mailed to putative collective action members is returned undeliverable, Plaintiffs may request from [the City] the phone number of those individuals so that Plaintiffs may contact the individual . . . to obtain a current mailing address." *Houston*, 591 F. Supp. 2d at 836 n.9. Although email communication may "now [be] the norm," *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (quoting *In re Deloitte & Touche, LLP Overtime Litig.*, 11 CIV. 2461 RMB THK, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)), the City has stated that it does not maintain a record of the personal email addresses of its firefighters.

Carolina" ("Proposed Initial Notice").  Plaintiffs seek the Court's approval of the Proposed Initial Notice and the Court's authorization to send it to prospective opt-in plaintiffs.  The City, in addition to requesting modification of the Proposed Initial Notice to account for the various objections outlined above, also asks that the language of the Proposed Initial Notice be amended in several other respects.  The Court will address the City's exceptions to the Proposed Initial Notice in turn.

Again, it is important to note that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."  *Hoffmann–La Roche, Inc.*, 493 U.S. at 169.  In facilitating such notice under the FLSA, courts also have "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs."  *Butler*, 876 F. Supp. 2d at 574 (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006)). "Neither the statute, nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain."  *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 60 (E.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  Moreover, the Supreme Court has expressly abstained from reviewing the contents of a proposed notice under § 216(b), instead "confirm[ing] the existence of the trial court's discretion, not the details of its exercise."  *Hoffman–La Roche, Inc.*, 493 U.S. at 170.  Nevertheless, "[w]hen exercising its broad discretion to craft appropriate notices in individual cases, District Courts [should] consider the overarching policies of [the FLSA's] collective suit provisions."  *Velasquez*, 2014 WL 2048425, at *9 (quoting *Fasanelli*, 516 F. Supp. 2d at 323 (internal quotation marks omitted)).  "The[se] overarching policies . . . require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about

whether to participate." *Butler*, 876 F. Supp. 2d at 574–75 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).  "Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Sylvester v. Wintrust Fin. Corp.*, 12 C 01899, 2013 WL 5433593, at *6 (N.D. Ill. Sept. 30, 2013) (quoting *Kelly v. Bank of Am., N.A.*, 10 C 5332, 2011 WL 7718421, at *1 (N.D. Ill. Sept. 23, 2011) (internal quotation marks omitted)).

      1.    <u>Scope of Persons to Whom Notice Is Sent</u>

      The City first asks the Court to revise the prefatory language of the Proposed Initial Notice to narrow the scope of individuals to whom the notice is directed and ultimately sent. Specifically, the City requests that the language be revised as follows, with the emphasized portion reflecting the proposed additions and edits:

> All persons employed ***in a non-exempt capacity*** by the City of Charleston, South Carolina at any time during the ***two*** years preceding [DATE OF ORDER] who served, or trained to serve, as a uniformed suppression member of the City of Charleston Fire Department***, and who were paid pursuant to the City's Fluctuating Workweek pay plan***.

Def.'s Resp. 24.  For the reasons outlined above with regard to the scope of the Primary Class, *supra* Part I.A., the City's objections are overruled in part and sustained in part.  Accordingly, the prefatory language shall be revised to read as follows:

> All persons employed in a non-exempt capacity by the City of Charleston, South Carolina at any time during the three years preceding [DATE OF ORDER] to the present who served, or trained to serve, as a uniformed suppression member of the City of Charleston Fire Department, and who were paid pursuant to the City's Fluctuating Workweek pay plan.

      2.    <u>Item No. 1 of Notice: "WHY YOU ARE RECEIVING THIS NOTICE"</u>

      The City also seeks to edit the language of the first section of Plaintiffs' Proposed Initial Notice, titled "Why You Are Receiving This Notice," by removing the text indicating that the

intent of the notice is to advise potential plaintiffs that their rights under the FLSA may be affected by this lawsuit.  According to the City, this language must be removed because it does not accurately reflect the law governing collective actions and may give potential plaintiffs the inaccurate impression that they could risk forfeiting rights by not joining the lawsuit.  The Court finds this argument persuasive, as the proposed language may be misleading or unduly coercive. Therefore, the City's objection is sustained and the text to which it takes exception in the first section of the Proposed Initial Notice shall be removed.

3.    Item No. 2 of Notice: "DESCRIPTION OF THE LAWSUIT"

The City also objects to certain language in the second section of the Proposed Initial Notice pertaining to Plaintiffs' three proposed subclasses.  For the reasons detailed above, *supra* Part I.B, the last two sentences of the third paragraph of this section shall be stricken.

4.    Item No. 3 of Notice: "YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT"

Next, the City again seeks to limit the applicable statute of limitations to two years and requests that the references to the three-year limitations period in the third section of the Proposed Initial Notice be changed to two years.  For the reasons stated above, *supra* Part I.A, the City's objection in this regard is overruled.

Additionally, the City takes issue with the second paragraph of this section of the Proposed Initial Notice.  According to the City, this paragraph pertains entirely to Plaintiffs' first proposed subclass, the members of which previously received a remedial payment from the City. Because the Court need not address Plaintiffs' proposed subclasses at this time, as noted *supra* Part I.B, this paragraph shall be removed.

5.      Item No. 4 of Notice: "EFFECT OF JOINING THIS LAWSUIT"

Lastly, the City presents two objections to, or requests regarding, the language in the fourth section of Plaintiffs' Proposed Initial Notice.  Plaintiffs do not address or respond to the City's objections or arguments in their Reply.

The City first objects to the fact that the Proposed Initial Notice fails to disclose certain details regarding the fee Plaintiffs' counsel stands to earn in the event of recovery.  The City primarily takes exception to the fact that the Proposed Initial Notice states that Plaintiffs' counsel will be paid "on a contingency fee basis out of any recovery" but does not disclose the exact percentage of the contingency fee.[6]  Although the City cites *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D.W. Va. 2012), for the fact that several district courts have found that the precise fee structure should be disclosed in the initial notice, a number of other courts have stopped short of requiring disclosure of this information in the Court-approved notice.  *See, e.g.*, *Curtis*, 2013 WL 1874848, at *10 (authorizing notice with language regarding contingency-fee arrangement that is nearly identical to the language in Plaintiffs' Proposed Initial Notice).  The Court finds that the language in the Proposed Initial Notice is sufficient to inform putative plaintiffs that Plaintiffs' counsel will be paid on a contingency fee basis.  Should potential opt-in plaintiffs have further questions regarding Plaintiffs' counsel's compensation or fee structure, the proposed language notes that a copy of the contingency fee agreement is available from Plaintiffs' counsel.  Moreover, any language ultimately approved by this Court does not negate the duty of Plaintiffs' counsel to explain the contingency fee arrangement with opt-in plaintiffs.  Therefore, the Court finds that the language in the Proposed Initial Notice is sufficient to enable

---

6.    The City also asserts that if the named Plaintiffs will stand to be compensated from any recovery to a greater extent than potential opt-in plaintiffs, the Court-approved notice should include a disclosure to this effect and should explain the terms and conditions of any such agreement.

potential plaintiffs to make informed decisions as to whether to participate in the lawsuit. Accordingly, the City's objection is overruled.

Next, the City requests that the Proposed Initial Notice be amended to include language notifying potential plaintiffs that they may be required to participate in discovery and testify at trial. More specifically, the City asks that the following language be added to the fourth section of the Proposed Initial Notice: "If you decide to opt in, you may be required to produce documents, respond to written interrogatories, appear for a deposition under oath, and testify at trial." Def.'s Resp. 27. The Court agrees with the City's request, and hereby sustains its objection. As noted by the court in *Byard*, "[c]ourts 'routinely accept[]' text notifying potential plaintiffs 'of the possibility that they will be required to participate in discovery and testify at trial.'" 287 F.R.D. at 374 (quoting *Whitehorn*, 767 F. Supp. 2d at 450); *see Pack v. Investools, Inc.*, 2:09-CV-1042 TS, 2011 WL 5325290, at *4 (D. Utah Nov. 3, 2011) ("The Court finds that this information will be helpful to recipients deciding whether to participate in the suit . . . ."); *Butler*, 876 F. Supp. 2d at 575 (modifying proposed notice to advise potential plaintiffs of possibility of having to participate in discovery process and at trial). Therefore, the Court will amend Plaintiffs' Proposed Initial Notice to include this additional information.

\* \* \*

In light of the foregoing, the Court authorizes Plaintiffs to issue a revised version of the Proposed Initial Notice, as modified and amended herein ("Authorized Notice"). A copy of the Authorized Notice is appended to this Order.

### B.    *Notice Period*

In their Motion, Plaintiffs request a notice period of sixty days from the date of mailing of the Authorized Notice for potential plaintiffs to file a notice indicating their consent to join this action. While the City acknowledges that notice periods of similar duration have been

authorized by other courts, it objects to Plaintiffs' request, claiming that under the circumstances of this case a thirty-day notice period is more appropriate.  In essence, the City argues that the pendency of this action has been publicized and discussed within the Fire Department, as well as the community more generally, to such an extent that a notice period of sixty days is unnecessary.  In support of its position, the City cites the number of firefighters who have already filed a notice of intent to join as plaintiffs.  Plaintiffs do not address the City's arguments in this regard in their Reply.  However, at the June 30, 2014 status conference, the Parties agreed that a forty-five day notice period is reasonable.

As the City correctly notes in its Response, district courts in the Fourth Circuit regularly authorize opt-in periods between thirty and sixty days.  *E.g.*, *Byard*, 287 F.R.D. at 373; *Steinberg*, 2011 WL 1335191, at *6.  In this case, the Court finds that the agreed-upon opt-in period of forty-five days from the date of mailing of the Authorized Notice sufficiently accounts for the City's concerns and is reasonable under the circumstances.

### C.    *Proposed Reminder Notice*

Plaintiffs also request that the Court authorize Plaintiffs' counsel to send a follow-up, or reminder, notice ("Reminder Notice") thirty days after dispatching the Authorized Notice.  The City objects to Plaintiffs' request for a Reminder Notice.  Plaintiffs do not respond to this objection in their Reply.  Under the circumstances of this case, the Court agrees with the City that the Authorized Notice is sufficient to advise putative plaintiffs of their right to opt-in to the lawsuit.  *See Byard*, 287 F.R.D. at 373 (finding that, where the notice period was only sixty days, a reminder notice was both unnecessary and potentially improper as it could inappropriately encourage putative plaintiffs to join the suit).  Accordingly, the City's objection is sustained, and Plaintiffs will not be permitted to send a Reminder Notice.

**D.      *Posting of the Authorized Notice***

Finally, Plaintiffs seek an Order from this Court requiring the City to post the Authorized Notice "in a conspicuous location in all of the Fire Stations of the Charleston Fire Department." Pls.' Mot. for Conditional Class Certification 22.  The City objects to this request and insists that posting the Authorized Notice is unnecessary and would be unduly disruptive.  Plaintiffs do not address or respond to the City's objection in their Reply.

As noted by the City, this litigation has generated a great deal of discussion within the Fire Department, with firefighters taking impassioned positions on either side.  Further, the Court is mindful of the fact that a fire station is quite different from the typical office or employment setting, as firefighters often work, sleep, and eat alongside each other in twenty-four-hour shifts. Accordingly, the Court finds that requiring the City to post the Authorized Notice in its fire stations will serve little purpose other than possibly increasing workplace tension, particularly when the potential plaintiffs who stand to see such a posting—current firefighters—are the very employees for whom the City is most likely to have up-to-date contact information.  *See Wass v. NPC Int'l, Inc.*, 09-2254-JWL, 2011 WL 1118774, at *12 (D. Kan. Mar. 28, 2011).  Moreover, Plaintiffs have failed to explain why, under the circumstances, notice by the prescribed means will be insufficient.  *See Curtis*, 2013 WL 1874848, at *8.  Thus, Plaintiffs' request is denied.

<u>CONCLUSION</u>

Therefore, for the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion for Conditional Class Certification is **GRANTED IN PART AND DENIED IN PART**, subject to the modifications and limitations outlined above.  It is **FURTHER ORDERED** that:

1.      Within ten (10) days of the entry of this Order, the City or its designated

representatives shall cause a copy of the names and addresses for all potential opt-

in plaintiffs who are members of the Primary Class to be served upon Plaintiffs' counsel. This list shall be treated by the Parties as confidential.

2.        Within twenty (20) days of the entry of this Order, the Parties or their counsel shall confer for purposes of producing an agreed upon discovery plan. Within ten (10) days of the Parties' conference, the Parties shall file a revised discovery plan pursuant to Fed. R. Civ. P. 26(f)(3) and Local Civ. R. 26.03, DSC.

3.        Within twenty (20) days of the entry of this Order and within ten (10) days of the production by the City of the contact information referenced above, Plaintiffs or their designated representatives shall cause a copy of the Authorized Notice, a copy of which is appended to this Order, to be mailed by first-class U.S. Mail to all potential opt-in plaintiffs. Plaintiffs are directed to notify the Court of the date the copies of the Authorized Notice are mailed to all potential opt-in plaintiffs.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**July 16, 2014**
**Charleston, South Carolina**