# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| James Regan, Jesse Faircloth, ) | |
| Michael Pack, Thomas Haffey, ) | |
| Jacob Stafford, and Kyle Watkins, ) | |
| Each on Behalf of Himself and All Others ) | |
| Similarly Situated, ) | |
| ) | |
| Plaintiffs, ) | C.A. No.: 2:13-cv-3046-PMD |
| ) | |
| v. ) | **ORDER** |
| ) | |
| City of Charleston, South Carolina, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant City of Charleston, South Carolina's ("City") Motion to Decertify or Narrow the Class (ECF No. 157). For the reasons set forth herein, the City's motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs James Regan, Jesse Faircloth, Michael Pack, Thomas Haffey, Jacob Stafford, and Kyle Watkins ("Plaintiffs"), current or former employees of the City's Fire Department ("Department"), commenced this action on November 7, 2013, on behalf of themselves and others similarly situated, seeking unpaid overtime compensation pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). More specifically, the above-named Plaintiffs, as well as those who have subsequently given notice of their consent to join this action, are current or former firefighters[1] who were paid by the City pursuant to the fluctuating workweek ("FWW") method.

___

1. For purposes of this Order, the Court refers to all uniformed fire protection and suppression members and employees of the Department as firefighters, without regard to rank.

On February 7, 2014, Plaintiffs moved for conditional certification of a proposed primary class and several subclasses. Following extensive briefing and a status conference, the Court issued an Order granting in part and denying in part Plaintiffs' Motion for Conditional Certification on July 16, 2014. Although the Court declined to conditionally certify Plaintiffs' proposed subclasses, the Court did conditionally certify the following primary class:

> All persons employed in a non-exempt capacity by the City of Charleston, South Carolina at any time from November 7, 2010 to the present who served, or trained to serve, as a uniformed suppression member of the City of Charleston Fire Department, and who were paid pursuant to the City's Fluctuating Workweek pay plan.

In conditionally certifying this matter as a collective action, the Court authorized Plaintiffs to provide putative class members with notice of the opportunity to opt-in to this lawsuit. To date, over 200 firefighters have joined this action.

The case then proceeded to discovery, and, following that, to the summary judgment stage. Plaintiffs and the City both filed motions for summary judgment on specific issues. This Court granted those motions in part and denied them in part.

On July 2, 2015, the City filed the instant motion to decertify or narrow the class. Plaintiffs filed a Response in Opposition on July 20. On July 30, the City filed a Reply in support of its motion. Accordingly, the motion is now ripe for consideration.

## **LEGAL STANDARD**

Under the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and similarly situated employees. The FLSA's collective action provision states that:

> [a]n action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a

2

> party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by "similarly situated" employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their employers. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014), *reconsideration denied*, 2014 WL 2121563 (E.D. Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20, 2014). In deciding whether the named plaintiffs in a FLSA action are "similarly situated" to other potential plaintiffs, courts generally employ a two-stage approach.[2] *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); *see also Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 6012484, at *1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

The first step is the "conditional certification" stage. *Purdham*, 629 F. Supp. 2d at 547. There, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" that they can "opt-in" to the collective action. *Pelczynski*, 284 F.R.D. at 367–68. With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts

---

2.  Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 30 F. Supp. 3d at 467 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, C/A No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process set forth in the cases identified above.").

have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At that stage, the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard," *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011), requiring plaintiffs to make a "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and the case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this optional "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 WL 1335191, at *2; *see Pelczynski*, 284 F.R.D. at 368. The plaintiffs maintain the burden of proving they are similarly situated to the opt-in plaintiffs. *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 886 (D. Md. 2011). If the court determines

4

that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss without prejudice the opt-in plaintiffs' claims, and permit the named plaintiffs to proceed on their individual claims. *Curtis*, 2013 WL 1874848, at *3; *see also Randolph v. PowerComm Constr., Inc.*, No. GJH-13-1696, 2015 WL 5009958, at *15 (D. Md. Aug. 21, 2015) ("The Court has broad discretion in determining whether the case should continue as a collective action after discovery.").

In the decertification context, "similarly situated" means "'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Pelczynski*, 284 F.R.D. at 368 (quoting *De Luna–Guerrero v. N.C. Grower's Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)). "'In FLSA actions, persons who are similarly situated to the plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment *or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements or pay provisions* . . . .'" *Id.* (quoting *De Luna–Guerrero*, 388 F. Supp. 2d at 654) (emphasis added in *Pelczynski*). "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at *3 (citation and internal quotation marks omitted).

## DISCUSSION

The class includes firefighters from four ranks: Fire Fighter, Assistant Engineer, Engineer, and Captain. In the course of discovery, the parties obtained evidence on all six named Plaintiffs and a group of forty opt-in plaintiffs whose claims were representative of the nearly 200 opt-in class members. Plaintiffs contend the evidence shows that on several

occasions, the City's FWW-based pay plan caused some firefighters' weekly regular rates of pay to fall below minimum wage. *See Griffin v. Wake Cty.*, 142 F.3d 712, 715 (4th Cir. 1998) (stating the FWW method requires, *inter alia*, that the employee's fixed weekly wage "be sufficient to provide compensation at a regular rate not less than the legal minimum wage." (citation and internal quotation marks omitted)). Affected firefighters included all six named Plaintiffs and four other opt-in representatives; all ten held the rank of Fire Fighter or Assistant Engineer. However, the parties did not identify any Engineer or Captain whose effective weekly regular rate of pay fell below minimum wage.

The City disputes that any violations of the minimum-wage requirement occurred.[3] It argues, however, that if those violations occurred, the named Plaintiffs are not sufficiently similar to any of the opt-in plaintiffs to warrant further class treatment of this case. The City's argument has two parts. First, the City contends the named Plaintiffs differ from the Engineer and Captain opt-in plaintiffs because all the named Plaintiffs had minimum-wage violations, while none of the Engineer and Captain opt-in representatives had any. Second, and similarly, the City contends the opt-in plaintiffs holding the rank of Fire Fighter or Assistant Engineer differ from the named Plaintiffs because only a handful of those opt-in plaintiffs experienced minimum-wage violations, while all six named Plaintiffs experienced such violations.

The City's arguments are unavailing. "Plaintiffs are similarly situated if they 'were victims of a common policy or plan that violated the law.'" *MacGregor*, 2011 WL 2981466, at *2 (quoting *Purdham*, 629 F. Supp. 2d at 549). In an earlier order addressing two of the parties'

---

3. In particular, the City asserts that when Plaintiffs calculated firefighters' regular rate of pay, they improperly excluded premiums paid to firefighters under the City's Incentive Pay ("IP") program. According to the City, those premiums must be included in the calculations, and when they are, no minimum-wage violations occurred. The City further asserts that even if Plaintiffs' calculations were correct, the instances of minimum-wage violations were so few that the City did not violate the FWW method. As explained herein, the Court need not rule on either of the City's arguments.

summary judgment motions, this Court held that the City's pay plan was incompatible with the FWW method. That pay plan applied to all the named and opt-in Plaintiffs in this case. Accordingly, in the context of the present analysis, they all were "victims of a common policy or plan that violated the law." *See also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005) ("If there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication."). That common thread supports a finding that the named Plaintiffs are similarly situated to the class members.

The possibility that some class members' salaries effectively fell below minimum wage does not change this Court's opinion. According to the City, the six named Plaintiffs and the four opt-in representatives experienced minimum-wage violations because they volunteered for far more unscheduled shifts than other class members. The City contends those firefighters' extraordinary level of volunteerism differentiates them from the rest of the class to such a degree that they are not similarly situated under § 216(b). However, the City's argument only shows dissimilarities in hours worked and in the amount of damages those firefighters may be able to recover. Such differences would not warrant decertification. *See LaFleur*, 30 F. Supp. 3d at 470 ("While actual hours worked and wages due may vary within the collective, district courts in the Fourth Circuit have clarified that '[d]ifferences as to time actually worked, wages actually due and hours involved' do not preclude a finding of a 'similarly situated' class." (quoting *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011))).

Moreover, the City has based its arguments on regular-rate calculations that it stresses are inaccurate. However, the Court need not decide whether Plaintiffs' calculations are correct. If one assumes that no violations of the minimum-wage requirement ever occurred, the alleged

7

dissimilarity among class members regarding regular rate of pay would no longer be present. The class members would all be similarly situated. In other words, the City's view of the evidence on regular rate of pay presents a stronger case for finding sufficient similarity than the Plaintiffs' view. Therefore, the Court rejects the City's arguments for decertifying the class.

Of course, the named Plaintiffs still bear the burden of proving they are similarly situated to the other members of the class. Having reviewed the parties' briefs and the record, the Court finds they have met their burden. As discussed above, all class members were subject to the same City pay plan. The Court sees no disparities in the class members' other professional characteristics that would warrant decertification. *See Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 307 (D. Md. 2014) ("'The first factor of the decertification analysis involves an assessment of whether Plaintiffs have provided evidence of a company-wide policy which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary.'" (quoting *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 687 (D. Md. 2012))). Second, many of the City's defenses apply generally to the class. *See Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV-174-H(2), 2011 WL 4549606, at *4 (E.D.N.C. Sept. 29, 2011) (finding decertification not warranted where, *inter alia*, defendant had asserted universally applicable defenses, such as good faith and lack of willfulness). Finally, fairness and procedural considerations weigh against decertification. Allowing the class members to litigate their claims in one action will lower parties' costs and promote judicial efficiency by allowing the court to resolve remaining common issues of law and fact in a single lawsuit. *See id.*

Alternatively, the City asks that the Court narrow the class period by one year. When the Court granted conditional certification, it defined the class to include firefighters who worked for

8

the Department at any time beginning with November 7, 2010—three years before Plaintiffs filed their complaint. The Court used that date because Plaintiffs had met their modest burden of proving, for the purposes of conditional certification, that the City willfully violated the FLSA. *See* 29 U.S.C. § 255(a) (providing that the normal two-year limitations period for a FLSA claim extends to three years if the violation was willful). That decision, however, was not a final ruling on the limitations period issue. Subsequently, on summary judgment, the Court held that the two-year limitations period applies in this case. The City asks that the Court amend the class definition to conform to that ruling, by making November 7, 2011 the new beginning date of the class period. Plaintiffs have not offered any response to this proposal. The Court finds the proposed amendment appropriate.

In sum, the Court declines to decertify the class. However, the Court amends the definition of the class as follows:

> All persons employed in a non-exempt capacity by the City of Charleston, South Carolina at any time from November 7, 2011 to the present who served, or trained to serve, as a uniformed suppression member of the City of Charleston Fire Department, and who were paid pursuant to the City's Fluctuating Workweek pay plan.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the City's Motion to Decertify or Narrow the Class is **GRANTED IN PART** and **DENIED IN PART**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**November 3, 2015**
**Charleston, South Carolina**

9